**SEWICKLEY VALLEY HOSPITAL; and The Medical Center, Beaver, PA, Appellants**

v.

**† Kathleen SEBELIUS, Secretary of the United States Department of Health and Human Services**

**(† Kathleen Sebelius is substituted for her predecessor Michael O. Leavitt, as Secretary of the United States Department of Health and Human Services, pursuant to Fed. R.App. P. 43(c)(2)).**

No. 08–3360.

United States Court of Appeals, Third Circuit.

Submitted Under Third Circuit LAR 34.1(a) May 20, 2009.

Filed: July 24, 2009.

---

168

Samuel W. Braver, Esq., Brendan C. Stuhan, Esq., Buchanan Ingersoll & Rooney, Pittsburgh, PA, for Appellants.

Joel L. McElvain, Esq., United States Department of Justice, San Francisco, CA, Michael S. Raab, Esq., United States Department of Justice, Washington, DC, for Michael Leavitt, as the Secretary of the United States Dept. of Health and Human Services.

Before: FUENTES, JORDAN, and NYGAARD, Circuit Judges.

## OPINION OF THE COURT

JORDAN, Circuit Judge.

Sewickley Valley Hospital ("Sewickley") and The Medical Center, Beaver, Pennsyl- vania ("the Medical Center") appeal from an order of the United States District Court for the Western District of Pennsyl- vania awarding summary judgment to the Secretary of Health and Human Services. For the following reasons, we will affirm.

## I. Background

This matter arises from the 1996 con- solidation of Sewickley and the Medical Center—two non-profit corporations that operated hospitals—into Valley Medical Facilities ("Valley Medical"). Sewickley surrendered to Valley Medical its assets, which consisted of approximately $47 mil- lion in monetary assets and $107 million in other business assets, and Valley Medi- cal assumed Sewickley's debts, which amounted to approximately $27 million. Likewise, the Medical Center gave Valley Medical its assets, approximately $122 million in monetary assets and $125 mil- lion in other business assets, and Valley Medical assumed its debts, approximately $93 million.[1]

After the consolidation, Sewickley and the Medical Center,[2] both of which were Medicare service providers, submitted to the Centers for Medicare and Medicaid Services ("CMS") reimbursement claims for loss on depreciable assets resulting from the transaction. Medicare's fiscal in- termediary denied the claims.[3] Sewickley and the Medical Center appealed the deci- sion to the Provider Reimbursement Re- view Board, which affirmed the intermedi-

---

1. Appraisals of Sewickley's and the Medical Center's business assets, excluding cash, were conducted after the consolidation.

2. Following the consolidation, Sewickley and the Medical Center became separate divisions of Valley Medical, and Valley Medical began doing business as Sewickley Valley Hospital and the Medical Center, Beaver, PA.

3. To obtain a reimbursement for reasonable medicare-related costs, a provider must file a claim with its fiscal intermediary, a private agency or organization under contract with Medicare. 42 C.F.R. § 413.24(f). *See also* 42 U.S.C. §§ 1395h, 1395kk-1.

ary's decision as to the Medical Center, but reversed as to Sewickley's claim. The CMS Administrator reviewed the Board's decision and ruled that neither claim was permissible under the operative regulations for two independent reasons: first, the transaction was not a bona fide sale, and, second, it was a related party transaction.

After the Secretary of Health and Human Services adopted the Administrator's ruling, Sewickley and the Medical Center sought relief in the District Court. The Court referred the matter to a magistrate judge, who recommended that the Administrator's decision be affirmed on the basis that there was no bona fide sale.[4] On June 19, 2008, the Court accepted the magistrate judge's recommendation and entered an order granting summary judgment to the Secretary and denying the same to Sewickley and the Medical Center. This timely appeal followed.

## II. Discussion[5]

Under the Medicare Act, Medicare service providers such as Sewickley and the Medical Center are entitled to be reimbursed for "the reasonable cost of such services." 42 U.S.C. § 1395f(b)(1). The Act empowers the Secretary of Health and Human Services ("the Secretary") to promulgate "regulations establishing the method or methods" of calculating reasonable costs. *Id.* § 1395x(v)(1)(A).

Of particular relevance here, the controlling regulations stated that a provider may claim reimbursement for "[a]n appropriate allowance for depreciation on buildings and equipment used in the provision of patient care...." 42 C.F.R. § 413.134(a). Reimbursement due to depreciation is calculated by prorating "the cost incurred by the present owner in acquiring the asset over the asset's estimated useful life," *id.* § 413.134(a)(3), and then estimating a percentage of the depreciation attributable to providing services to Medicare patients. If assets are disposed of through a statutory merger, § 413.134(k) provides for a Medicare loss or gain adjustment as long as the merger was between "unrelated parties," as defined in 42 C.F.R. § 413.17. In addition, the merger must constitute a "bona fide sale" in order to trigger an adjustment. *See id.* § 413.14(f).

In a document called "Program Memorandum A–00–76," dated October 19, 2000, the Secretary addressed the applicability of the regulations cited above and clarified that a bona fide sale is a transaction in which parties negotiate at arms' length and exchange reasonable consideration. Furthermore, although the "unrelated parties" and "bona fide sale" provisions apply expressly to statutory mergers and not to consolidations, Program Memorandum A–00–76 indicates that they apply with equal force to both.

Sewickley and the Medical Center argue that they are entitled to a readjustment for two reasons. First, they claim that it was improper for the Administrator to deny their claims on the basis of a program memorandum that was unpublished and inconsistent with previous interpretations of the operative regulations. Second, they argue that they fulfill the "bona fide sale" requirement, even if it applies to consolidations.[6] Their first argument is

---

4. Because his conclusion as to the lack of a bona fide sale was dispositive, the magistrate judge did not reach the "related parties" issue.

5. The District Court had jurisdiction under 42 U.S.C. 1395oo(f)(1). We have jurisdiction under 28 U.S.C. 1291.

6. Like the District Court, we need not address appellants' "related parties" arguments be-

foreclosed by our recent decision in *Albert Einstein Med. Ctr. v. Sebelius,* 566 F.3d 368 (3d Cir.2009). In that case, we held that Program Memorandum A–00–76 "offered a clarification of the Bona Fide Sale Provision that was not inconsistent with previous agency policy." *Id.* at 378. All that is left for us to decide, then, is whether the Valley Medical consolidation constituted a bona fide sale.

We must uphold the Administrator's finding that the consolidation was not a bona fide sale as long as it is supported by substantial evidence. 5 U.S.C. § 706(2)(E). "Substantial evidence is 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " *Mercy Home Health v. Leavitt,* 436 F.3d 370, 380 (3d Cir.2006) (quoting *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971)).

Substantial evidence does buttress the Administrator's conclusion. Beyond the fact that neither Sewickley's nor the Medical Center's assets were placed on the open market, the lack of an arms' length transaction can be inferred from the entities' decision to not seek a pre-consolidation appraisal and from the paucity of any indication that there were negotiations over the price of assets or the value of debts.[7] Moreover, a quick comparison of the assets surrendered by each entity to the debts assumed by Valley Medical reveals that neither Sewickley nor the Medical Center received reasonable consideration. The contributed monetary assets alone appear to dwarf the debts that the entities shed.

Sewickley and the Medical Center argue that arms' length bargaining and the exchange of reasonable consideration are foreign to consolidations, which, by their nature, do not involve negotiation over the price of assets. That contention amounts to a disagreement with Program Memorandum A–00–76. As noted above, however, that Memorandum offers the controlling interpretation of the operative regulations.

### III. Conclusion

For the foregoing reasons, we will affirm the District Court's order granting summary judgment to the Secretary and denying the same to Sewickley and the Medical Center.

---

cause our resolution of the "bona fide sale" issue is dispositive.

7. The appellants argue that they and the fiscal intermediary had stipulated that there were negotiations regarding the consolidation, and the record evidence they cite (Appx.284) does indeed say that, but that is all it says. There is no mention of negotiations relative to the value of assets and liabilities. Given the wide range of issues that could have been discussed and the appellants' failure to mention any other evidence indicating actual negotiations over the value of the entities, the inference drawn by the Secretary is supported by the record. *See Via Christi Reg'l Med. Ctr., Inc. v. Leavitt,* 509 F.3d 1259, 1277 (10th Cir.2007) ("[The provider] had the burden of showing that the transaction fit within § 413.134(l)'s 'bona fide sale' provision."); *Mercy Home Health,* 436 F.3d at 380 ("The governing statutes and regulations indicate that the burden of proof remains on the provider.").